RSS/2011RO0503

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA

    v.

STEPHEN F. CORBA, JR.

      :  Criminal No. 11- 523 (Jei)
      :
      :  18 U.S.C. §§ 982(a)(1),
      :  1349 & 1956(h)
      :
      :
      :  I N F O R M A T I O N

The defendant having waived in open court prosecution by indictment, the United States Attorney for the District of New Jersey charges:

## COUNT 1

### (Conspiracy To Commit Wire Fraud)

**The Defendant and Co-conspirators**

1.  At all times relevant to this Information:

(a)  J.W., who is named as a co-conspirator but not as a defendant herein, resided in New Jersey, was the co-owner of the companies, Blue and White Management, LLC ("Blue and White Management") and Nittany Construction, LLC ("Nittany Construction"), and had control over the company, Old Main Financial Services & Management LLC ("Old Main Financial Services & Management"). J.W. held himself out to be a provider of real estate investors.

(b)  C.H., who is named as a co-conspirator but not as a defendant herein, resided in Pennsylvania, was the co-owner of the companies, Blue and White Management and Nittany

Construction, and had control over the company, Old Main Financial Services & Management.  C.H. held himself out to be a provider of real estate investors.

(c)  Defendant STEPHEN F. CORBA, JR. resided in New Jersey, was a real estate agent, was the owner of the companies, SSC Consulting Services, Inc. ("SSC Consulting Services") and DPC Consulting Services, and held himself out to be a provider of real estate investors.

(d)  W.B., who is named as a co-conspirator but not as a defendant herein, resided in New Jersey, was the owner of the company, Big B Investment Corp., a/k/a "Big Brown Investment, LLC" ("Big B Investment") and held himself out to be a provider of real estate investors.

(e)  Blair Witkowski, who is named as a co-conspirator but not as a defendant herein, resided in South Carolina and was a mortgage loan officer at Carolina First Bank and Bank of America, N.A. ("Bank of America").  Blair Witkowski owned the companies, HHM Associates, HHM Construction, Hilton Head Marketing, Construction Review Specialties, and Construction Technologies, had control over the companies, HHM Partners and Empire Construction, and held himself out to be a real estate property manager.

(f)  R.S., who is named as a co-conspirator but not as a defendant herein, resided in New Jersey, and was a loan officer

2

at Wells Fargo Home Mortgage, Inc. ("Wells Fargo Home Mortgage"), a division of Wells Fargo Bank, N.A. ("Wells Fargo Bank").

(g)    C.P., who is named as a co-conspirator but not as a defendant herein, resided in New Jersey, was the bookkeeper for Blue and White Management, and was the owner of the companies, Maplewood Dial and Drive Corp. ("Maplewood Dial and Drive") and PAC Associates.   C.P. also had control over the company, The Holding Group, a/k/a "The Holding Insurance & Annuity Group, Inc." ("The Holding Group").

(h)    E.N., who is named as a co-conspirator but not as a defendant herein, resided in New Jersey, and was the owner of the companies Emerald Investments, a/k/a "Emerald Investment Properties, LLC" ("Emerald Investments") and Emerald Construction, LLC ("Emerald Construction").

(i)    I.T., who is named as a co-conspirator but not as a defendant herein, resided in New Jersey, and was a loan representative at CitiFinancial in Long Branch, New Jersey.

(j)    C.B., who is named as a co-conspirator but not as a defendant herein, resided in New Jersey.

(k)    J.M., who is named as a co-conspirator but not as a defendant herein, resided in New Jersey, and was a title agent at Shore Title located in North Wildwood, New Jersey.

(l)    K.Y., who is named as a co-conspirator but not as a defendant herein, resided in New Jersey, and was the owner of

3

the company, Closers on Call, LLC.

(m)  J.S., who is named as a co-conspirator but not as a defendant herein, resided in New Jersey.

(n)  G.L., who is named as a co-conspirator but not as a defendant herein, resided in New Jersey.

(o)  A.M., who is named as a co-conspirator but not as a defendant herein, resided in New Jersey.

(p)  M.K., who is named as a co-conspirator but not as a defendant herein, resided in New Jersey, and was listed as a partner in the company, Meteora Technologies, LLC ("Meteora Technologies").

(q)  M.W., who is named as a co-conspirator but not as a defendant herein, resided in New Jersey.

(r)  M.J., who is named as a co-conspirator but not as a defendant herein, resided in New Jersey and was the owner of Apollo Oil, Inc.

**Other Entities**

2.  At all times relevant to this Information:

(a)  The Silver Dollar was a real estate development which consisted of multiple condominium units located at 501 East Stanton Avenue, Wildwood Crest, New Jersey 08260.

(b)  The Ebb Tide was a real estate development which consisted of multiple condominium units located at 5711 Atlantic

Avenue, Wildwood Crest, New Jersey 08260.

(c)   Stockton Beach House was a real estate development which consisted of multiple condominium units located at 520 Stockton Road, Wildwood Crest, New Jersey 08260.

(d)   The Vista Mar was a real estate development which consisted of multiple condominium units located at 501 East Stockton Avenue, Wildwood Crest, New Jersey 08260.

(e)   American Brokers Conduit was engaged in the business of making mortgage loans and had offices in Melville, New York.

(f)   Ameris Bank was engaged in the business of making mortgage loans and had offices in Moultrie, Georgia.

(g)   Atlantic Bank & Trust was engaged in the business of making mortgage loans and had offices in Charleston, South Carolina.

(h)   Bank of America was engaged in the business of making mortgage loans and had offices in Charlotte, North Carolina.

(i)   Beach First National Bank was engaged in the business of making mortgage loans and had offices in Myrtle Beach, South Carolina.

(j)   Carolina First Bank was engaged in the business of making mortgage loans and had offices in Greenville, South Carolina.

(k)   PHH Mortgage/Century 21 Mortgage ("Century 21 Mortgage") was engaged in the business of making mortgage loans and had offices in Parsipanny, New Jersey.

(l)   Chase Bank USA, N.A. ("Chase Bank") was engaged in the business of making mortgage loans and had offices in New York, New York.

(m)   First Franklin Financial Corp. was engaged in the business of making mortgage loans and had offices in San Jose, California.

(n)   GMFS, LLC ("GMFS") was engaged in the business of making mortgage loans and had offices in Baton Rouge, Louisiana.

(o)   Harbourside Community Bank was engaged in the business of making mortgage loans and had offices in Hilton Head Island, South Carolina.

(p)   JPMorgan Chase & Co. ("JPMorgan Chase") was engaged in the business of making mortgage loans and had offices in New York, New York.

(q)   Lehman Brothers Bank, FSB ("Lehman Brothers Bank") was engaged in the business of making mortgage loans and had offices in Gaithersburg, Maryland.

(r)   Lowcountry National Bank was engaged in the business of making mortgage loans and had offices in Beaufort, South Carolina.

(s)   MJS Lending, Inc. ("MJS Lending") was engaged in

6

the business of making mortgage loans and had offices in Hasbrouck Heights, New Jersey.

(t)  Palmetto State Bank was engaged in the business of making mortgage loans and had offices in Hampton, South Carolina.

(u)  SunTrust Mortgage, Inc. ("SunTrust Mortgage") was engaged in the business of making mortgage loans and had offices in Atlanta, Georgia.

(v)  Wachovia Mortgage, FSB ("Wachovia Mortgage") was engaged in the business of making mortgage loans and had offices in Charlotte, North Carolina.

(w)  Washington Mutual Bank, F.A. ("Washington Mutual Bank") was engaged in the business of making mortgage loans and had offices in Seattle, Washington.

(x)  Wells Fargo Bank was engaged in the business of making mortgage loans and had offices in Colorado Springs, Colorado.

(y)  Wells Fargo Home Mortgage was engaged in the business of making mortgage loans and had offices in San Francisco, California.

(z)  Closers on Call was a title company at which real estate transactions took place and had offices in Union, New Jersey.

(aa) Colony Abstract Title Company was a title company at which real estate transactions took place and had offices in

7

Southampton, Pennsylvania.

(bb) Shore Title was a title company at which real estate transactions took place and had offices in North Wildwood, New Jersey.

(cc) The Title Company of Jersey was a title company at which real estate transactions took place and had offices in Marmora, New Jersey.

(dd) Mosaic Title and Abstract, LLC ("Mosaic Title and Abstract") was a title company at which real estate transactions took place and had offices in Red Bank, New Jersey.

(ee) First Option Title Agency was a title company at which real estate transactions took place and had offices in Cherry Hill, New Jersey.

**Mortgage Lending Generally**

3.   Mortgage loans were loans funded by banks and other financial institutions ("Lenders") to enable purchasers to finance the purchase of real estate.  To apply for a mortgage loan, purchasers/borrowers typically filled out several forms, including a form called the Uniform Residential Loan Application. Lenders evaluated and relied upon the financial representations contained in the Uniform Residential Loan Application and other documents pertaining to the purchaser/borrower's income, assets, credit eligibility, and down payment requirements in deciding

8

whether to loan a particular purchaser/borrower money for a mortgage. Lenders also evaluated and relied upon the representations in connection with the loan application pertaining to the purchaser/borrower's employment, and how the purchaser/borrower intended to use the property as either a primary residence, secondary residence, or investment property. In addition, Lenders also assessed the value of the real estate that would secure the mortgage loan by reviewing and relying on property appraisals and other documents.

4. After locating an available property of interest, a purchaser/borrower typically applied for a mortgage loan through a mortgage Lender or a mortgage originator. Generally, mortgage brokers were third parties who acted as an intermediary between a purchaser/borrower and a pool of potential Lenders, one of which was selected based on the purchaser/borrower's financing needs and ability to repay the loan. Mortgage brokers were generally responsible for collecting documents from the purchaser/borrower in support of the mortgage loan, including the loan application. Additionally, the mortgage broker interviewed the proposed purchaser/borrower and obtained all pertinent data including the borrower's name, date of birth, social security number, home address, monthly base employment income, employer, assets, and liabilities. Frequently, the mortgage broker made the initial loan to the purchaser/borrower and then sold it to a

Lender after a short period of time, usually between one to thirty days after making the loan.  Other times, the mortgage broker simply obtained and verified all of the relevant information for the Lender, including information on the Uniform Residential Loan Application, and the Lender made the mortgage directly to the borrower.  A mortgage originator also assisted a purchaser/borrower to complete a mortgage transaction.  Unlike a mortgage broker, a mortgage originator distributed its own money to fund the mortgage.

5.    Real estate appraisers were responsible for determining the fair market value of real estate properties. Fair market value was defined as the most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, in which the buyer and seller act prudently and knowledgeably, assuming the price is not affected by undue stimulus.

6.    Frequently, the mortgage loan was closed at a title company or an attorney's office.  If a loan closed at a title company, the title company's escrow officers were responsible for depositing monetary instruments and funds provided by the purchaser/borrower (including down payments) and mortgage funds from the Lender (which were typically obtained by wire transfer) or on its behalf to the title company's escrow account, and, when authorized by the parties to the transaction

and the Lender, for disbursing the funds from the escrow account to various individuals and entities as detailed on the U.S. Department of Housing and Urban Development Settlement Statement (hereinafter "HUD-1 Settlement Statement).  The HUD-1 Settlement Statement detailed the actual disbursement of monies, including mortgage fund loans, to the proper entities and/or individuals according to the original loan application.

7.    After the loan application was approved, the mortgage Lender caused funds to be transmitted (typically by wire transfer) to a settlement agent, such as a title company or a closing attorney.  The title companies and/or closing attorneys then distributed the funds according to the HUD-1 Settlement Statements, generally with a large portion of the funds being distributed to the seller of the property.  After funding the mortgages, the mortgage Lenders either serviced the loans during the mortgage period or sold them in the secondary market.

**The Conspiracy**

8.    From in or about September 2006 through on or about September 30, 2008, at Wildwood, in Cape May County, in the District of New Jersey, and elsewhere, defendant

STEPHEN F. CORBA, JR.

did knowingly and intentionally conspire and agree with others to devise a scheme and artifice to defraud, and to obtain money and

property by means of materially false and fraudulent pretenses, representations, and promises, which scheme and artifice is set forth below in substance and in part, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communications in interstate commerce certain writings, signs, signals, pictures, and sounds, contrary to Title 18, United States Code, Section 1343.

## Object Of The Conspiracy

9.   The objects of the conspiracy, which caused more than forty (40) million dollars of losses to various Lenders, were to profit from the sale of (a) oceanfront condominiums overbuilt by financially distressed developers in Wildwood Crest, New Jersey, (b) premier real estate in vacation-destinations in Georgia and South Carolina, and (c) properties in New Jersey owned by financially distressed homeowners facing foreclosure, by obtaining mortgage loans for unqualified borrowers using fraudulent loan applications, HUD-1 Settlement Statements, and other documents.

## Manner And Means Of The Conspiracy

10.   It was part of the conspiracy that co-conspirators J.W., C.H., and defendant STEPHEN F. CORBA, JR. located oceanfront condominiums overbuilt by financially distressed

12

developers in Wildwood Crest, New Jersey (the "Wildwood Crest Properties") to purchase.

11. It was further part of the conspiracy that co-conspirator Blair Witkowski located premier real estate in vacation-destinations in Georgia and South Carolina (the "Georgia/South Carolina Properties") to purchase.

12. It was further part of the conspiracy that co-conspirators J.W., C.H., and W.B. located properties in New Jersey owned by financially distressed homeowners facing foreclosure (the "Foreclosure Bailout Properties") to purchase.

13. It was further part of the conspiracy that defendant STEPHEN F. CORBA, JR. and co-conspirators J.W., C.H., W.B., E.N., I.T., C.B. and others, recruited "straw purchasers," (the "Straw Purchasers") to purchase the Wildwood Crest Properties, the Georgia/South Carolina Properties, and/or the Foreclosure Bailout Properties. The Straw Purchasers included, among others, co-conspirators J.S., G.L., A.M., M.K., M.J., and M.W., whom the conspirators knew had good credit scores, but lacked the financial resources to qualify for mortgage loans.

14. It was further part of the conspiracy that defendant STEPHEN F. CORBA, JR. and J.W., C.H., W.B., E.N., I.T., C.B. and others informed the Straw Purchasers, including J.S., G.L., A.M., M.K., M.J., and M.W., and the Straw Purchasers agreed, that in exchange for purchasing the properties in their

13

names, the Straw Purchasers:

       a.    would neither pay deposits or closing costs to acquire the properties;

       b.    would not have to make monthly mortgage payments after they owned the properties;

       c.    would receive an up-front payment after the closing for allowing their names and credit information to be used in connection with the transaction; and/or

       d.    would not have to manage the properties because J.W. and C.H.'s company, Blue and White Management, and Blair Witkowski would maintain the properties, locate renters, collect rent, and make mortgage payments.

       15.   It was further part of the conspiracy that the conspirators obtained mortgage loans for the Straw Purchasers through fraudulent loan applications by providing false information concerning the employment, income, and assets of the Straw Purchasers and the Straw Purchasers' intended use of the properties.

       16.   It was further part of the conspiracy that the conspirators, including co-conspirators C.H., C.P., and Blair Witkowski created false documents such as fake Forms W-2, income tax returns, investment "statements," and rental agreements to make the Straw Purchasers appear more creditworthy than the Straw Purchasers actually were in order to induce the Lenders to make

14

the loans to the Straw Purchasers.

17. It was further part of the conspiracy that co-conspirators J.W., C.H., C.P., and others established numerous telephone lines for the companies owned by some of the conspirators, such as Old Main Financial Services & Management, Maplewood Dial and Drive, The Holding Group, and Meteora Technologies, so that when a Lender's representative contacted the telephone number, the conspirators could falsely verify that a Straw Purchaser was employed by the company listed on the Straw Purchaser's fraudulent loan application.

18. It was further part of the conspiracy that the conspirators caused fraudulent documents to be prepared concerning the properties, including HUD-1 Settlement Statements that were supposed to accurately reflect the amounts of money due from the Straw Purchasers and to be paid to the sellers to close the sales of the properties.

19. It was further part of the conspiracy that prior to and during the closings, the conspirators caused the HUD-1 Settlement Statements, settlement disbursement sheets, and other documents to be manipulated, to show that the Straw Purchasers brought their own funds to the closing when, in fact, the Straw Purchasers did not.

20. It was further part of the conspiracy that the conspirators, including J.W., C.H. and Blair Witkowski, took

proceeds from the fraudulent mortgage loans by having funds wired or checks deposited into various accounts that they controlled. The Straw Purchasers, including co-conspirators J.S., G.L., A.M., M.K., M.J., and M.W., were paid a portion of the funds, and the recruiters of the Straw Purchasers, such as defendant STEPHEN F. CORBA, JR., W.B., E.N., I.T., and C.B., shared the remainder of the funds with other co-conspirators, such as J.W., C.H., and Blair Witkowski.

**Furthering The Conspiracy**

21. In furtherance of the conspiracy and to effect its objects, its members committed and caused to be committed numerous transactions involving the properties, including those on or about the following dates involving the following approximate amounts:

a. The Wildwood Crest Properties

| Closing Date | Property | Lender | Mortgage Funds Released |
|---|---|---|---|
| 4/13/07 | Vista Mar, Unit 102, 501 E. Stockton Ave., Wildwood Crest, NJ 08260 | First Franklin Financial Corp. | $767,414.12 |
| 7/25/07 | Silver Dollar, Unit 101, 501 E. Stanton Ave., Wildwood Crest, NJ 08260 | Century 21 Mortgage | $610,870.78 |

16

| Closing Date | Property | Lender | Mortgage Funds Released |
|---|---|---|---|
| 7/26/07 | Silver Dollar, Unit 202, 501 E. Stanton Ave., Wildwood Crest, NJ 08260 | Century 21 Mortgage | $601,662.62 |
| 7/27/07 | Ebb Tide, Unit 102, 5711 Atlantic Ave., Wildwood Crest, NJ 08260 | JPMorgan Chase | $650,225.67 |
| 8/2/07 | Ebb Tide, Unit 202, 5711 Atlantic Ave., Wildwood Crest, NJ 08260 | JPMorgan Chase | $644,786.76 |
| 8/2/07 | Ebb Tide, Unit 401, 5711 Atlantic Ave., Wildwood Crest, NJ 08260 | JPMorgan Chase | $645,188.73 |
| 8/20/07 | Ebb Tide, Unit 201, 5711 Atlantic Ave., Wildwood Crest, NJ 08260 | JPMorgan Chase | $650,118.89 |
| 8/21/07 | Silver Dollar, Unit 102, 501 E. Stanton Ave., Wildwood Crest, NJ 08260 | Wells Fargo Home Mortgage; Wells Fargo Bank | $628,848.79 |
| 8/21/07 | Silver Dollar, Unit 401, 501 E. Stanton Ave., Wildwood Crest, NJ 08260 | Wells Fargo Home Mortgage; Wells Fargo Bank | $979,664.21 |
| 8/22/07 | Silver Dollar, Unit 103, 501 E. Stanton Ave., Wildwood Crest, NJ 08260 | Century 21 Mortgage | $570,137.60 |
| 8/22/07 | Silver Dollar, Unit 301, 501 E. Stanton Ave., Wildwood Crest, NJ 08260 | Wells Fargo Home Mortgage; Wells Fargo Bank | $980,852.81 |

| Closing Date | Property | Lender | Mortgage Funds Released |
|---|---|---|---|
| 8/24/07 | Ebb Tide, Unit 301, 5711 Atlantic Ave., Wildwood Crest, NJ 08260 | JPMorgan Chase | $650,605.64 |
| 8/27/07 | Silver Dollar, Unit 402, 501 E. Stanton Ave., Wildwood Crest, NJ 08260 | Wells Fargo Home Mortgage; Wells Fargo Bank | $980,539.80 |
| 8/27/07 | Silver Dollar, Unit 201, 501 E. Stanton Ave., Wildwood Crest, NJ 08260 | Wells Fargo Home Mortgage; Wells Fargo Bank | $609,260.54 |
| 8/29/07 | Silver Dollar, Unit 302, 501 E. Stanton Ave., Wildwood Crest, NJ 08260 | Wells Fargo Home Mortgage; Wells Fargo Bank | $981,231.77 |
| 9/14/07 | Ebb Tide, Unit 101, 5711 Atlantic Ave., Wildwood Crest, NJ 08260 | Wells Fargo Home Mortgage; Wells Fargo Bank | $643,839.75 |
| 10/5/07 | Ebb Tide, Unit 302, 5711 Atlantic Ave., Wildwood Crest, NJ 08260 | Wells Fargo Home Mortgage; Wells Fargo Bank | $645,970.07 |
| 11/16/07 | Stockton Beach House, Unit 206, 520 E. Stockton Rd.,Wildwood Crest, NJ 08260 | Wells Fargo Home Mortgage; Wells Fargo Bank | $969,821.75 |
| 11/16/07 | Stockton Beach House, Unit 502, 520 E. Stockton Rd.,Wildwood Crest, NJ 08260 | Wells Fargo Home Mortgage; Wells Fargo Bank | $1,143,127.95 |
| 12/27/07 | Stockton Beach House, Unit 103, 520 E. Stockton Rd.,Wildwood Crest, NJ 08260 | Wells Fargo Home Mortgage; Wells Fargo Bank | $538,816.90 |

| Closing Date | Property | Lender | Mortgage Funds Released |
|---|---|---|---|
| 12/27/07 | Stockton Beach House, Unit 202, 520 E. Stockton Rd.,Wildwood Crest, NJ 08260 | Wells Fargo Home Mortgage; Wells Fargo Bank | $548,254.80 |
| 12/27/07 | Stockton Beach House, Unit 204, 520 E. Stockton Rd.,Wildwood Crest, NJ 08260 | Wells Fargo Home Mortgage; Wells Fargo Bank | $491,798.55 |
| 12/27/07 | Stockton Beach House, Unit 301, 520 E. Stockton Rd.,Wildwood Crest, NJ 08260 | Wells Fargo Home Mortgage; Wells Fargo Bank | $941,286.44 |
| 2/13/08 | Stockton Beach House, Unit 102, 520 E. Stockton Rd.,Wildwood Crest, NJ 08260 | Wachovia Mortgage | $464,188.75 |
| 2/15/08 | Stockton Beach House, Unit 402, 520 E. Stockton Rd.,Wildwood Crest, NJ 08260 | Wachovia Mortgage | $525,836.54 |
| 2/29/08 | Stockton Beach House, Unit 302, 520 E. Stockton Rd.,Wildwood Crest, NJ 08260 | Wachovia Mortgage | $630,781.20 |
| 3/18/08 | Stockton Beach House, Unit 501, 520 E. Stockton Rd.,Wildwood Crest, NJ 08260 | Chase Bank | $640,697.42 |

| Closing Date | Property | Lender | Mortgage Funds Released |
|---|---|---|---|
| 5/13/08 | Stockton Beach House, Unit 106, 520 E. Stockton Rd.,Wildwood Crest, NJ 08260 | Washington Mutual Bank$846,510.63 | |

**b.    The Georgia/South Carolina Properties**

| Closing Date | Property | Lender | Mortgage Funds Released |
|---|---|---|---|
| 10/27/06 | 14 Halsey Cir., Bluffton, SC 29910 | Lehman Brothers Bank; Carolina First Bank | $528,053.03 |
| 11/29/06 | 9 Mahalo Ln., Bluffton, SC 29910 | Lehman Brothers Bank; Carolina First Bank | $646,406.15 |
| 12/28/06 | 16 Mises Rd., Lady's Island, SC 29907 | SunTrust Mortgage | $1,412,524.92 |
| 1/12/07 | 19 Mahalo Ln., Bluffton, SC 29910 | GMFS | $642,312.49 |
| 1/31/07 | 15 Mahalo Ln., Bluffton, SC 29910 | GMFS | $683,660.95 |
| 1/31/07 | 17 Mahalo Ln., Bluffton, SC 29910 | SunTrust Mortgage; Carolina First Bank | $634,574.70 |
| 2/16/07 | 24 Gregorie Neck Rd., Okatie, SC 29909 | Washington Mutual Bank | $1,451,429.73 |
| 4/17/07 | 23 Sparnel Rd., Savannah, GA 31411 | SunTrust Mortgage | $754,909.70 |

20

| Closing Date | Property | Lender | Mortgage Funds Released |
|---|---|---|---|
| 5/24/07 | 161 Summerton Dr., Bluffton, SC 29910 | Palmetto State Bank | $1,361,000.00 |
| 7/11/07 | 71 Heron Way, Port Royal, SC 29906 | Bank of America | $1,055,000.00 |
| 8/20/07 | 5 Topsail Ct., Savannah, GA 31411 | Bank of America | $653,000.00 |
| 8/23/07 | 10 Indigo Plantation Dr., Okatie, SC 29909 | Harbourside Community Bank | $1,550,000.00 |
| 9/27/07 | 4 Oldfield Village Rd., Okatie, SC 29909 | Beach First National Bank | $1,250,300.00 |
| 2/4/08 | 45 Sommer Lake Dr., Beaufort, SC 29902 | Bank of America | $632,100.00 |
| 3/20/08 | 55 Sommer Lake Dr., Beaufort, SC 29902 | Wachovia Mortgage | $484,436.96 |
| 3/26/08 | 83 Tanglewood Dr,. Beaufort, SC 29902 | Ameris Bank | $512,050.00 |
| 3/26/08 | 72 Heron Way, Port Royal, SC 29935 | Lowcountry National Bank | $485,100.00 |
| 3/28/08 | 81 Tanglewood Dr., Beaufort, SC 29902 | Atlantic Bank & Trust | $484,009.18 |
| 4/1/08 | 53 Sommer Lake Dr., Beaufort, SC 29902 | Atlantic Bank & Trust | $1,314,919.94 |
| 5/13/08 | 73 Heron Way, Port Royal, SC 29935 | Wachovia Mortgage | $481,613.18 |
| 5/14/08 | 71 Heron Way, Port Royal, SC 29935 | Atlantic Bank & Trust | $1,380,526.44 |

21

c.    The Foreclosure Bailout Properties

| Closing Date | Property | Lender | Mortgage Funds Released |
|---|---|---|---|
| 9/26/06 | 407 Indiana Ave., Phillipsburg, NJ 08865 | MJS Lending | $235,468.50 |
| 2/21/07 | 23 Maple Ave., West Orange, NJ 07052 | MJS Lending | $595,122.00 |
| 2/27/07 | 660-672 N. Broad St., Elizabeth, NJ 07208 | MJS Lending | $245,675.83 |
| 3/2/07 | 132 Ward St., Orange, NJ 07050 | MJS Lending | $272,987.22 |
| 4/26/07 | 28 Schooner Landing Rd,. Galloway, NJ 08205 | American Brokers Conduit | $450,000.00 |
| 5/1/07 | 152 Carolina Ave,. Irvington, NJ 07111 | American Brokers Conduit | $337,000.00 |
| 6/25/07 | 19 Mine St., Flemington, NJ 08822 | American Brokers Conduit | $332,375.00 |

22.    These transactions generally followed the same pattern:

a.    Defendant STEPHEN F. CORBA, JR., and co-conspirators J.W., C.H., and/or Blair Witkowski located a real estate property to purchase.

b.    Defendant STEPHEN F. CORBA, JR., and co-conspirators J.W., C.H., W.B., E.N., I.T., and/or C.B. recruited a Straw Purchaser, such as co-conspirators J.S., G.L., A.M., M.K., M.J., and M.W., to purchase the property.

c.    Co-conspirators C.H. and Blair Witkowski

22

completed the Straw Purchaser's loan application, attributed to the Straw Purchaser inflated incomes, false bank account balances, fake sales contract deposits, and fictitious assets. C.H., Blair Witkowski, and others also sometimes falsely indicated that the properties would be owner-occupied, rather than investment properties.

d.    Co-conspirators J.W. and C.H. instructed co-conspirator C.P. to create false documents such as fake Forms W-2, income tax returns, and investment "statements," which were supplied to support the false information contained on the fraudulent loan application.  Co-conspirators C.H. and Blair Witkowski also prepared similar false documents.

e.    Co-conspirators W.B., C.P. and E.N. falsely verified the purported employment of the Straw Purchaser at companies such as Big B Investment, Maplewood Dial and Drive, PAC Associates, The Holding Group, Emerald Investments, and Emerald Construction, when a Lender sought verification that a Straw Purchaser was so employed as listed on the fraudulent loan application.

f.    The Straw Purchaser or a designee attended the closing which was held at a title company such as Colony Abstract Title Company, Shore Title, the Title Company of Jersey, Mosaic Title and Abstract, First Option Title Agency, or Closers on Call.  There, co-conspirators J.W., C.H., and others directed

23

title clerks, such as co-conspirators J.M. and K.Y., to prepare documents for the closings, including fraudulent HUD-1 Uniform Settlement Statements signed by the Straw Purchaser reflecting deposits and funds brought to closing by the Straw Purchaser that had never been made.

g.     Title clerks, such as co-conspirators J.M. and K.Y., distributed proceeds of the fraudulently-obtained mortgage loan to the conspirators by wire transferring funds into an account controlled by co-conspirators J.W., C.H., and Blair Witkowski, or issuing a check made payable to the co-conspirators' companies, such as Blue & White Management, Nittany Construction, HHM Associates, HHM Construction, Construction Technologies, Hilton Head Marketing, and Empire Construction.

h.     Co-conspirators C.H. and Blair Witkowski then distributed a portion of the proceeds to other members of the conspiracy for their respective roles in it.

In violation of Title 18, United States Code, Section 1349.

## COUNT 2

### (Conspiracy To Commit Money Laundering)

1.    Paragraphs 1 through 7 and 9 through 22 of Count 1 of this Information are hereby realleged and incorporated as though set forth in full herein.

2.    From in or about September 2006 through on or about September 30, 2008, in the District of New Jersey and elsewhere, defendant

STEPHEN F. CORBA, JR.

did knowingly conspire with others to engage in monetary transactions, namely, deposits, withdrawals, transfers and exchanges of U.S. currency and monetary instruments, through financial institutions affecting interstate commerce, in criminally derived property of a value greater than $10,000 that was derived from specified unlawful activity, namely, conspiracy to commit wire fraud and wire fraud, contrary to Title 18, United States Code, Section 1957.

3.    As part of the conspiracy, the conspirators caused more than forty million dollars in fraudulent mortgage loans to be funded during 2006, 2007, and 2008 to enable unqualified Straw Purchasers to purchase the Wildwood Properties, the Georgia/South Carolina Properties, and the Foreclosure Bailout Properties. Once the funds for these mortgages were deposited into a title company's escrow account, the co-conspirators extracted proceeds

from the fraud through wire transfers and checks to defendant STEPHEN F. CORBA, JR., and co-conspirators J.W., C.H., and Blair Witkowski who, in turn, transmitted a portion of those proceeds to the co-conspirators who recruited the Straw Purchasers to purchase the properties and to the Straw Purchasers.

4.   As further part of the conspiracy, defendant STEPHEN F. CORBA, JR., and co-conspirators J.W., C.H., and Blair Witkowski caused the following wire transfers or checks to be deposited for the following approximate amounts:

a.   Proceeds Associated with Sales of the Wildwood Crest Properties

| Date of Monetary Transaction | Wire Transfer or Check | Amount | Received By |
|---|---|---|---|
| 4/16/07 | Check | $115,000.00 | Blue & White Management |
| 7/27/07 | Check | $195,000.00 | Blue & White Management |
| 7/27/07 | Check | $185,000.00 | Blue & White Management |
| 7/27/07 | Check | $128,784.00 | Blue & White Management |
| 7/27/07 | Check | $9,716.00 | Blue & White Management |
| 8/3/07 | Wire Transfer | $288,989.00 | Blue & White Management |
| 8/3/07 | Wire Transfer | $126,511.00 | SSC Consulting Services |
| 8/21/07 | Wire Transfer | $119,055.20 | Blue & White Management |
| 8/21/07 | Wire Transfer | $19,444.80 | SSC Consulting Services |
| 8/22/07 | Wire Transfer | $500,000.00 | Nittany Construction |

| Date of Monetary Transaction | Wire Transfer or Check | Amount | Received By |
|---|---|---|---|
| 8/23/07 | Wire Transfer | $475,000.00 | Nittany Construction |
| 8/27/07 | Wire Transfer | $118,500.00 | Blue & White Management |
| 8/28/07 | Wire Transfer | $500,000.00 | Nittany Construction |
| 8/30/07 | Wire Transfer | $300,000.00 | Nittany Construction |
| 9/14/07 | Wire Transfer | $158,500.00 | Blue & White Management |
| 10/5/07 | Wire Transfer | $170,124.88 | Blue & White Management |
| 3/3/08 | Wire Transfer | $164,000.00 | Blue & White Management |
| 3/24/08 | Wire Transfer | $103,028.44 | Nittany Construction |
| 5/14/08 | Wire Transfer | $71,237.00 | Blue & White Management |

   b.   Proceeds Associated with the Georgia/South
        Carolina Properties

| Date of Monetary Transaction | Wire Transfer or Check | Amount | Received By |
|---|---|---|---|
| 11/6/06 | Check | $50,000.00 | C.H. |
| 12/4/06 | Check | $50,000.00 | C.H. |
| 1/2/07 | Check | $125,000.00 | C.H. |
| 1/17/07 | Check | $56,000.00 | C.H. |
| 2/5/07 | Wire Transfer | $73,000.00 | C.H. |

| Date of Monetary Transaction | Wire Transfer or Check | Amount | Received By |
|---|---|---|---|
| 2/20/07 | Wire Transfer | $255,000.00 | C.H. |
| 5/30/07 | Wire Transfer | $110,000.00 | Blue & White Management |
| 5/31/07 | Wire Transfer | $47,749.00 | Blue & White Management |
| 6/4/07 | Wire Transfer | $115,000.00 | Defendant STEPHEN F. CORBA, JR. |
| 9/11/07 | Wire Transfer | $50,000.00 | Blue & White Management |
| 10/1/07 | Wire Transfer | $155,000.00 | SSC Consulting Services |
| 12/14/07 | Check | $15,000.00 | DPC Consulting Services |
| 4/2/08 | Wire Transfer | $25,000.00 | Nittany Construction |
| 4/4/08 | Wire Transfer | $119,337.00 | SSC Consulting Services |
| 4/14/08 | Check | $17,775.00 | SSC Consulting Services |
| 5/16/08 | Wire Transfer | $122,152.00 | SSC Consulting Services |
| 6/5/08 | Check | $20,000.00 | SSC Consulting Services |
| 7/30/08 | Check | $10,000.00 | DPC Consulting Services |
| 8/13/08 | Check | $10,000.00 | DPC Consulting Services |
| 9/30/08 | Check | $10,000.00 | DPC Consulting Services |

c.    Proceeds Associated with the Foreclosure Bailout Properties

| Date of Monetary Transaction | Wire Transfer or Check | Amount | Received By |
|---|---|---|---|
| 10/6/06 | Check | $34,408.16 | C.H. |

| Date of Monetary Transaction | Wire Transfer or Check | Amount | Received By |
|---|---|---|---|
| 2/22/07 | Check | $107,607.96 | C.H. |
| 2/27/07 | Check | $62,226.56 | C.H. |
| 3/6/07 | Check | $45,977.97 | C.H. |
| 4/30/07 | Check | $70,677.96 | Blue & White Management |
| 5/8/07 | Check | $42,741.47 | Blue & White Management |

5.    As further part of the conspiracy, co-conspirators C.H., Blair Witkowski, and others caused checks to be deposited and wire transfers to be made from the proceeds associated with the sales of the properties into bank accounts of the co-conspirators who recruited the Straw Purchasers to purchase the properties and to the Straw Purchasers.

In violation of Title 18, United States Code, Section 1956(h).

## FORFEITURE ALLEGATION

1. The United States hereby gives notice to defendant STEPHEN F. CORBA, JR. that, upon his conviction of the offense in violation of Title 18, United States Code, Section 1956(h) charged in Count 2 of this Information, the Government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), of all property, real and personal, involved in those offenses, and all property traceable thereto, including but not limited to a sum of money equal to at least approximately $488,907.61 in United States currency, representing the amount of proceeds obtained as a result of the offense, for which the defendant is jointly and severally liable.

2. If any of the above-described forfeitable property, as a result of any act or omission of defendant STEPHEN F. CORBA, JR.:

a.      cannot be located upon the exercise of due diligence;

b.      has been transferred or sold to, or deposited with, a third party;

c.      has been placed beyond the jurisdiction of the court;

d.      has been substantially diminished in value; or

e.      has been commingled with other property which cannot be divided without difficulty; it is the intent of

30

the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of defendant STEPHEN F. CORBA, JR. up to the value of the forfeitable property described above.

Pursuant to Title 18, United States Code, Section 982(a)(1).


_____
PAUL J. FISHMAN
UNITED STATES ATTORNEY

CASE NUMBER: <u>2011RO0503</u>

# United States District Court
# District of New Jersey

## UNITED STATES OF AMERICA

### v.

## STEPHEN F. CORBA, JR.

# INFORMATION

Title 18, United States Code, Sections 982(a)(1), 1349, and 1956(h)

**PAUL J. FISHMAN**

*U.S. ATTORNEY, NEWARK, NEW JERSEY*

R. STEPHEN STIGALL

*ASSISTANT U.S. ATTORNEY*
*CAMDEN, NEW JERSEY*
*856.757.5026*